IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| DIANA SOTO,                   § | | |
|     Plaintiff,              § | | |
| § | | |
| § | | |
| v.                             § | No. EP-13-CV-28-ATB | |
| § | (by consent) | |
| § | | |
| CAROLYN W. COLVIN,             § | | |
| Acting Commissioner of the     § | | |
| Social Security Administration,[1] § | | |
|     Defendant.              § | | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

### I. PROCEDURAL HISTORY

On April 16, 2010, Plaintiff filed an application for SSI, alleging a disability onset date of September 27, 1991. (R. 121). Her application was denied initially and denied upon reconsideration. (R. 38, 55). Plaintiff filed a request for a hearing, which was held on July 18,

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

2011.  (R. 18-35, 59).  The Administrative Law Judge ("ALJ") issued a decision on September 14, 2011, denying benefits.  (R. 8-14).  Subsequently, the Appeals Council denied review.  (R. 1-3).

## II.     ISSUES

Plaintiff presents the following issues for review:

1. Whether the ALJ erred in finding that Plaintiff could perform the full range of sedentary work.[2]  (Pl.'s Br. 2, ECF No. 17).
2. Whether the ALJ erred in applying the Medical-Vocational Guidelines.  (*Id.*)

Plaintiff contends that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence.  (*Id.* at 3-5).  Specifically, Plaintiff claims that the ALJ's RFC determination does not include a sit/stand option.  (*Id.*)  Accordingly, Plaintiff claims that failure to include a sit/stand option resulted in the ALJ's erroneous application of the Medical-Vocational Guidelines at step five.  (*Id.* at 3, 5).  Plaintiff argues that the ALJ was required to seek testimony from a vocational expert ("VE") at step five because the Medical-Vocational Guidelines cannot be applied to an individual who requires a sit/stand option.  (*Id.* at 5-6, citing *Scott v. Shalala*, 30 F.3d 33, 34 (5th Cir. 1994)).  Consequently, Plaintiff seeks a reversal and remand for an award of benefits or for further administrative proceedings.  (*Id.* at 6).

## III.     DISCUSSION

### A.     Standard of Review

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper

---

[2] 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").  Additionally, sedentary work implicitly contains a finding that Plaintiff could sit for up to six hours in an eight-hour workday.  *Lawler v. Heckler*, 761 F.2d 195, 197-98 (5th Cir. 1985)).

legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citations omitted); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citation omitted). "Substantial evidence 'is more than a mere scintilla, and less than a preponderance.'" *Masterson*, 309 F.3d at 272 (citation omitted). The Commissioner's findings will be upheld if supported by substantial evidence. *Id.* (citation omitted). A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam) (internal quotation marks and citation omitted).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272 (citation omitted). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.* (citation omitted); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citation omitted).

**B.     Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

In the present case, the ALJ found that Plaintiff had a severe impairment of osteoarthritis[3] of the hips. (R. 10). The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments. (R. 10). In doing so, the ALJ determined that Plaintiff's impairment did not meet the criteria of listing 1.02, Major Dysfunction of a Joint(s) (Due to Any Cause) and listing 1.03, Reconstructive Surgery or Surgical Arthrodesis of a Major Weight-bearing Joint, or any other listed impairment. (R. 10; *see* 20 C.F.R. Part 404, Subpart P, Appendix 1). After considering the entire record, the ALJ determined that Plaintiff retained the RFC to perform a full range of sedentary work. (R. 10-13). The ALJ then determined that Plaintiff had no past relevant work. (R. 13). After considering Plaintiff's RFC, age, education, and work experience, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, specifically, Guideline 201.27, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 13-14). Consequently, the ALJ found that Plaintiff was not disabled through the date of the decision. (R. 13).

**C.     The ALJ's Determination of Plaintiff's Residual Functional Capacity**

Plaintiff contends that substantial evidence does not support the ALJ's determination that she retains the capacity to perform the full range of sedentary work because the ALJ failed to include a sit/stand option. (Pl.'s Br. 3-5, ECF No. 22). She argues that limitations from severe osteoarthritis of her hips necessitate the inclusion of a sit/stand option. (*Id.*)

Residual functional capacity ("RFC") is the most an individual can still do despite his or her limitations. 20 C.F.R. §404.1545; SSR 96-8p. The responsibility to determine the plaintiff's

---

[3] Osteoarthritis is defined as "a noninflammatory degenerative joint disease seen mainly in older persons, characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane. It is accompanied by pain, usually after prolonged activity, and stiffness, particularly in the morning or with inactivity." *See Dorland's Illustrated Medical Dictionary* 1344 (32d ed. 2012).

RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine the plaintiff's abilities despite his or her physical and mental limitations. *Martinez*, 64 F.3d at 176. The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) (per curiam). The ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

It is the plaintiff's burden to establish disability and to provide or identify medical and other evidence of her impairments. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(c). A medically determinable impairment must be established by acceptable medical sources. 20 C.F.R. § 404.1513(a). The plaintiff's own subjective complaints, without objective medical evidence of record, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

**D.   Analysis**

As a preliminary matter, the Court stresses that the relevant question for review is whether the ALJ's decision is supported by substantial evidence, not whether the record contains evidence to support a sit/stand option. *See Navarro v. Colvin*, No. A-12-CV-040-LY-AWA, 2013 WL 1704795, at *3 (W.D. Tex. Apr. 19, 2013) (citing *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997)). Additionally, the ALJ is tasked with weighing all of the evidence presented, *Chambliss*, 269 F.3d at 523, and the ALJ is not required to summarize and discuss every piece of record evidence in his or her decision. *Falco v. Shalala*, 27 F.3d 160, 164 (5th

Cir. 1994) (holding that the ALJ does not have to "follow formalistic rules in his articulation" of the record evidence). Moreover, the mere presence of an impairment is not disabling per se, and subjective evidence of pain will not take precedence over conflicting medical evidence. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985). While the ALJ must take into account the plaintiff's subjective allegations of pain in determining the RFC, the plaintiff must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and results from legal error. (Pl.'s Br. 3, ECF No. 22). In particular, Plaintiff alleges that the ALJ omitted a sit/stand option when determining Plaintiff's RFC. (*Id.* at 3-5). Plaintiff contends that the objective medical evidence and her testimony and subjective complaints support the inclusion of a sit/stand option. (*Id.*) Plaintiff further contends that the ALJ summarily rejected Dr. Michael Boone's Medical Source Statement ("MSS"). (*Id.* at 5). As a result of failing to include a sit/stand option, Plaintiff argues that the ALJ erroneously relied upon the Medical-Vocational Guidelines at step five of the sequential evaluation process. (*Id.* at 3, 5). Plaintiff further argues that the ALJ was required to seek VE testimony to determine whether Plaintiff can perform other work that exists within the national economy. (*Id.* at 3, 5-6, citing *Scott v. Shalala*, 30 F.3d 33 (5th Cir. 1994)).

The Commissioner responds by arguing that the medical opinions of Dr. Randy J. Pollet, the consultative examiner, Dr. Jacob S. Heydemann, Plaintiff's treating physician, and Dr. John Durfor, the state agency medical consultant, provide substantial evidence in support of the ALJ's RFC determination. (Def.'s Br. 4-6, ECF No. 19). The Commissioner contends that Plaintiff's

statements to various doctors contradict her allegations of disability and support the ALJ's RFC determination. (*Id.* at 6-7). The Commissioner further contends that Dr. Boone's MSS was properly rejected as unsupported by the medical evidence. (*Id.* at 7-8). The Commissioner argues that objective medical tests do not support further restrictions in Plaintiff's RFC. (*Id.* at 8, citing *Hames*, 707 F.2d at 165). The Commissioner further argues that Plaintiff's subjective complaints alone do not support a sit/stand option and thus there was no legal error. (*Id.* at 8-9, citing *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989); *Falco*, 27 F.3d at 164). The Commissioner maintains that the ALJ correctly applied Rule 201.27 of the Medical-Vocational Guidelines to find that Plaintiff was not disabled because substantial evidence demonstrates that Plaintiff retained the RFC to perform the full range of sedentary work without a sit/stand option. (*Id.* at 10, citing *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); R. 10, 13-14). The Commissioner therefore contends that Plaintiff's argument is without merit and the ALJ's decision is supported by substantial evidence and does not result from legal error. (*Id.* at 10).

A review of the record evidence indicates that there is substantial evidence to support the ALJ's conclusion that Plaintiff retained the capacity to perform the full range of sedentary work. Furthermore, the record clearly demonstrates that the ALJ was not required to include a sit/stand option in determining Plaintiff's RFC because it is clear from the ALJ's opinion that he took into account Plaintiff's medical history, subjective complaints of pain, and her testimony. Consequently, the ALJ did not err at step five by applying the Medical-Vocational Guidelines.

The Court finds that Plaintiff's visits with Dr. Heydemann provide substantial evidence supporting the ALJ's RFC determination. Plaintiff was treated by Dr. Heydemann for several years following her hip surgeries. (R. 246-56). Plaintiff is guilty of cherry-picking one line from an August 14, 2008 visit with Dr. Heydemann where he recommended that Plaintiff refrain from

physical education at school in order to support her argument. (Pl.'s Br. 4, ECF No. 17; R. 247). The Court finds that during that visit, Dr. Heydemann also stated that Plaintiff was stable, was not having any pain, and that he believed a sedentary position was "ideal" for Plaintiff. (R. 247). Moreover, the Court finds that the remainder of Dr. Heydemann's observations and findings support the ALJ's RFC determination and these records are devoid of any limitations in Plaintiff's ability to sit. (R. 246, 248-56). The record evidence further shows that on December 4, 2007, Plaintiff stated that she was not bothered by her hip condition and Dr. Heydemann noted that Plaintiff was dancing and "doing her normal activities without complaints or hesitation." (R. 248). On November 13, 2007, Dr. Heydemann observed that Plaintiff was active, that she plays, runs, and does everything, that she has excellent range of motion in her hip, and that Plaintiff stated that she was asymptomatic. (R. 249). On June 25, 2007, Dr. Heydemann noted that Plaintiff was playing and dancing without complaints. (R. 250). Moreover, Plaintiff's CT scans and MRIs support Dr. Heydemann's diagnoses and do not provide any evidence of limitation. (R. 263-69). Therefore, the Court finds that Dr. Heydemann's records support the ALJ's RFC determination.

Additionally, the Court finds that Dr. Pollet's examination provides substantial evidence supporting the ALJ's RFC determination. On June 15, 2010, Plaintiff presented to Dr. Pollet with allegations of congenital hip dislocation with arthritis bilaterally, mild spinal pain, cracking in both knees, and bilateral shoulder pain. (R. 218). Dr. Pollet noted that Plaintiff previously had nineteen surgeries on her hips and multiple MRI examinations. (R. 218). Dr. Pollet further noted that Plaintiff complained of weakness and fatigue in both lower extremities, pain in her hips, back, and shoulder that is "constant" and "burning." (R. 218). Plaintiff stated that normally she wakes up at 7:00 A.M., eats breakfast, plays with her child, and sits down to watch

television the rest of the day. (R. 218). Plaintiff further stated that she could walk for only ten minutes, that she could not climb stairs, that she could only stand and sit for short periods of time other than to watch television, and that she had the ability to use her shoulders, arms, and hands in a useful manner. (R. 218-19). Dr. Pollet also noted that Plaintiff was interested in business administration and was capable of working on a computer and using a cell phone. (R. 219). Dr. Pollet indicated that Plaintiff was occasionally taking 800 milligrams of Ibuprofen. (R. 219).

Dr. Pollet also performed a physical examination of Plaintiff. Dr. Pollet observed that Plaintiff seemed to be in "mild distress." (R. 219). Dr. Pollet also observed that Plaintiff had a "minimally painful gait on both sides" but did not use an assistive device to walk and denied using a cane. (R. 219). Dr. Pollet further observed that Plaintiff walked with an antalgic[4] bilateral Trendelenburg gait[5] and short leg gait and that the range of motion in both of Plaintiff's hips was "somewhat compromised." (R. 219). Dr. Pollet also observed that the range of motion in Plaintiff's feet, ankles, knees, shoulders, neck, and spinal area were normal, that Plaintiff had "minimal discomfort" on range of motion testing, that there was no unusual swelling, tenderness, redness, or inflammation, that Plaintiff was neurologically intact, that Plaintiff had "mild difficulty" in performing tandem walking, walking on her heels and toes, and in squatting, that Plaintiff was able to dress and undress without assistance, and that Plaintiff could stand up from a chair and get on and off the examination table without assistance. (R. 220). Dr. Pollet diagnosed Plaintiff with Grade III osteoarthritis in her left hip and Grade II osteoarthritis in her right hip. (R. 220). Dr. Pollet indicated that Plaintiff's prognosis was "somewhat good" and that

---

[4] Antalgic gait is defined as "a limp adopted so as to avoid pain on weight-bearing structures (as in hip injuries), characterized by a very short stance phase." *See Dorland's Illustrated Medical Dictionary* 753 (32d ed. 2012).

[5] Trendelenburg gait is defined as "the gait characteristic of paralysis of the gluteus medius muscle, marked by a listing of the trunk toward the affective side at each step." *See Dorland's Illustrated Medical Dictionary* 754 (32d ed. 2012).

medical treatment should be conservative. (R. 220). Dr. Pollet also indicated that Plaintiff should use a cane in her right hand and that over-the-counter Tylenol should be recommended. (R. 220). Finally, Dr. Pollet noted that Plaintiff was able to walk and sit without difficulty and that she should be placed in the sedentary or light work categories. (R. 220). The Court finds that Dr. Pollet's findings are consistent with the record evidence and that the ALJ properly considered Dr. Pollet's findings when making his RFC determination. (R. 12).

The Court finds that Dr. Durfor's RFC determination provides further substantial evidence supporting the ALJ's RFC determination. *See Brown v. Astrue*, Civ. A. No. 3:08-CV-0255-D, 2009 WL 64117, at *4 (N.D. Tex. Jan. 12, 2009) (citations omitted); *Barrington v. Barnhart*, Civ. A. No. SA02CA0993RF, 2005 WL 2137911, at *7 (W.D. Tex. July 13, 2005). On July 7, 2010, a Physical Residual Functional Capacity Assessment form was completed by Dr. Durfor. (R. 226-33). Dr. Durfor determined that Plaintiff was able to perform sedentary work with no postural, manipulative, visual, communicative, or environmental limitations. (R. 228-30). In making this determination, Dr. Durfor considered Plaintiff's daily living activities and noted that her treating physician indicated that she may be a candidate for hip replacement surgery. (R. 233). Dr. Durfor concluded that Plaintiff was 'limited by osteoarthritis/congenital dislocation of both hips, but the impact of these symptoms [did] not fully compromise her ability to work on a sustained basis." (R. 233). Dr. Durfor also concluded that Plaintiff's "alleged limitations [were] partially supported by [the medical evidence of record]." (R. 233). The Court notes that Dr. Durfor's RFC determination was affirmed by Dr. Laurence Ligon. (R. 234).

The Court finds that Plaintiff's December 18, 2010 visit with Dr. Jose Alicea provides further substantial evidence supporting the ALJ's RFC determination. Plaintiff presented to Dr.

Alicea with complaints of bilateral hip pain. (R. 235). Dr. Alicea noted that Plaintiff expressed that she was feeling pain and that she occasionally took Ibuprofen. (R. 235). Dr. Alicea observed that Plaintiff had "pain with internal rotation and flexion of the hips." (R. 235). Dr. Alicea reviewed x-rays of Plaintiff's hips showing arthritis in both hips, the left hip worse than the right hip. (R. 235). Dr. Alicea diagnosed Plaintiff with osteoarthrosis and congenital dislocation of her hip and prescribed fifteen milligrams of Mobic. (R. 235). The Court finds that Plaintiff's visit with Dr. Alicea provides substantial evidence supporting the ALJ's RFC determination because it is devoid of any functional limitations as a result of Plaintiff's hip condition.

The Court also finds that the limitations noted in Plaintiff's February 9, 2011 visit with Art Gutierrez, P.A.,[6] in conjunction with Dr. Alicea,[7] do not impact Plaintiff's ability to sit. (R. 238-39). P.A. Gutierrez noted that Plaintiff was responding successfully to Mobic and that Plaintiff stated it "helped her overall pain syndrome significantly and has also had a significant positive impact on her [daily living activities]." (R. 238). P.A. Gutierrez observed that Plaintiff had a "very limited range of motion making it difficult for bending, stooping, [and] squatting activities[] and also . . . walking activities." (R. 238). He diagnosed Plaintiff with osteoarthrosis, refilled her prescription for Mobic, and referred her to Dr. Boone for a disability determination. (R. 239). The Court finds that Plaintiff's visit with P.A. Gutierrez also provides substantial evidence in support of the ALJ's decision because there is no indication that Plaintiff has any limitations on her ability to sit and Plaintiff's statements that Mobic alleviated her pain

---

[6] As a physician's assistant, Gutierrez is not considered an "acceptable" medical source under the regulations. *See* SSR 06–03p; 20 C.F.R. § 404.1513(d); *see also Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991) (recognizing that the regulations accord less weight to sources other than medical doctors).

[7] The Court further notes that Dr. Alicea was present during the examination and signed the report. (R. 239).

supports a finding that she is not disabled. *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (holding that a medical condition reasonably remedied by medication is not disabling) (citations omitted).

The Court also finds that the ALJ properly rejected the MSS provided by Dr. Boone. On February 14, 2011, Dr. Boone completed an MSS which included substantial limitations. (R. 240-43). Dr. Boone determined that Plaintiff had exertional limitations in her ability to lift and/or carry, stand and/or walk, sit, and push and/or pull. (R. 240-41). Dr. Boone stated that Plaintiff could lift and/or carry less than ten pounds occasionally and lift and/or carry less than ten pounds frequently, that Plaintiff required an assistive device for ambulation, that Plaintiff must alternate between sitting and standing, and that Plaintiff was limited in her ability to push and/or pull in her lower extremities. (R. 240-41). Dr. Boone asserted that Plaintiff's severe arthritis in her hip prevented her from performing these exertional functions because it could cause pain. (R. 240-41). Dr. Boone also found that Plaintiff could never climb, balance, kneel, crouch, crawl, or stoop. (R. 241). Dr. Boone found that Plaintiff had no manipulative, visual, or communicative limitations. (R. 242). Finally, Dr. Boone stated that Plaintiff was limited by temperature extremes, vibration, humidity/wetness, hazards, and fumes, odors, chemicals, and gases because it could increase Plaintiff's pain. (R. 243).

The ALJ is free to assign "little or no weight" to the opinion of any physician for good cause. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000) (citations omitted). Good cause exists where statements are "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005) (emphasis omitted). Here, the ALJ determined that Dr. Boone's MSS contained extreme limitations that were unsupported by the record and

inconsistent with Dr. Pollet's examination. (R. 13). A review of the record demonstrates that Dr. Boone's assignment of extreme physical limitations does not coincide with the rest of the medical evidence. Moreover, the record is devoid of any evidence that Dr. Boone treated Plaintiff or performed a physical examination to support his MSS. Therefore, the Court concludes that good cause existed to support the ALJ's determination and the rejection of Dr. Boone's opinion.

The Court also rejects Plaintiff's argument that her testimony supports a sit/stand option. (Pl.'s Br. 5, ECF No. 17). A review of Plaintiff's testimony regarding her functional limitations demonstrates that it is inconsistent with the record evidence. Although Plaintiff testified that she can only sit for fifteen minutes at a time, she told Dr. Pollet that she could sit all day to watch television and he recommended that she work in a sedentary or light work position. (R. 22-23, 218, 220). Moreover, Dr. Heydemann recommended that she work in a sedentary position and Plaintiff did not report pain during several visits. (R. 247-50, 254, 256). The ALJ determined that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms was not credible to the extent her testimony was inconsistent with the ALJ's RFC determination. (R. 11). This is "precisely the kind[] of determination[] that the ALJ is best positioned to make" as the ALJ "enjoys the benefit of perceiving first-hand [Plaintiff] at the hearing." *Falco*, 27 F.3d at 164. Additionally, the ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record. *See Morris*, 864 F.2d at 336. Therefore, the Court finds that the ALJ properly determined Plaintiff's credibility.

As the Court finds that substantial evidence supports the ALJ's RFC determination, the Court rejects Plaintiff's argument that the ALJ erred at step five by applying the Medical-Vocational Guidelines to reach a finding that Plaintiff was not disabled and that the ALJ was

required to seek VE testimony. (Pl.'s Br. 5-6, ECF No. 17). The record evidence discussed above demonstrates that the ALJ did not err by failing to include a sit/stand option. As the ALJ found that Plaintiff could perform a full range of sedentary work, the ALJ's use of the Medical-Vocational Guidelines was appropriate and the ALJ did not have to seek VE testimony. *See Lawler v. Heckler*, 761 F.2d 195, 197 (5th Cir. 1985) (per curiam) ("We have repeatedly held that the [Commissioner] may rely on the medical-vocational guidelines to establish that work exists for a claimant only if the guidelines' evidentiary underpinnings coincide exactly with the evidence of disability appearing on the record." (internal quotation marks and citations omitted)). Therefore, the Court finds that the Commissioner's decision should be affirmed.

## IV. CONCLUSION

A review of the record supports the ALJ's findings and RFC determination. Consequently, the Court finds that substantial evidence supports the Commissioner's decision. Based on the foregoing, the Court **HEREBY ORDERS** that the decision of the Commissioner be **AFFIRMED** consistent with this opinion.

**SIGNED** and **ENTERED** this 10th day of November, 2015.

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**